10437

STATE v. HARDIN.

(108 S. E. 557.)

1. CRIMINAL LAW—INSTRUCTION AS TO MALICE INFERRED FROM USE OF DANGEROUS WEAPON HELD NOT OBJECTIONABLE.—In homicide prosecution, instruction, authorizing jury to infer malice from use of dangerous weapon, *held* not objectionable as a charge on the facts.

2. HOMICIDE — INSTRUCTION THAT DEFENDANT BY PLEADING SELF-DEFENSE ADMITTED INTENTIONALLY KILLING DECEASED HELD NOT ERROR.—In homicide prosection defendant on the ground of self-defense, instruction that defendant admitted that he took deceased's life intentionally with a deadly weapon *held* not error, as against contention that a self-defense plea is not an admission of an intentional killing.

3. HOMICIDE — INSTRUCTION AS TO PROVOCATION HELD NOT ERROR.—In homicide prosecution, instruction on provocation, giving illustration as to sufficiency of provocation to reduce the homicide from murder to manslaughter, *held* not objectionable as against contention that the illustration was irrelevant to the case, and neither parallel nor analogous thereto, and that instruction limited provocation to acts stated in illustration.

4. HOMICIDE—INSTRUCTION AS TO FAULT IN BRINGING ON DIFFICULTY WITHOUT REFERENCE TO DEGREE OF FAULT NOT ERROR.—In homicide prosecution involving self-defense issue, instruction that plea of self-defense fails, unless defendant shows that he was without fault in bringing on the difficulty, without instructing as to the degree or kind of fault that would be excusable or inexcusable, *held* not error, as against contention that Court permitted jury to fix its own standard of fault, without regard to whether such fault would be excusable.

5. HOMICIDE—TO SUPPORT SELF-DEFENSE, TAKING OF DECEASED'S LIFE MUST HAVE BEEN THE ONLY MEANS OF ESCAPE.—In homicide prosecution, defendant, by proving that he was without fault in bringing on the difficulty, that he was in danger at time of striking fatal blow,

and that such danger would have been apparent to a person of ordinary intelligence, does not sustain self-defense plea, but must, in addition thereto, prove that he had no other means of escape than to take deceased's life.

6. HOMICIDE—REFUSAL OF INSTRUCTION ON SELF-DEFENSE HELD PROPER. —In homicide prosecution where defendant pleaded self-defense, refusal to instruct that defendant, being without fault in a place where he has a right to be, may repel force by force if violently assaulted, and is excused if in so doing assailant is killed, *held* not error.

7. HOMICIDE—REFUSAL TO INSTRUCT AS TO PUBLIC OFFICER'S RIGHT TO KILL ASSAILANT HELD NOT ERROR.—In prosecution of deputy constable for homicide, refusal to instruct that a public officer, who is attacked while in the lawful exercise of his duties, is under no duty to retreat, and may kill assailant if necessary to save himself from death or serious bodily injury, *held* not error.

Before GARY, J., Cherokee, Fall term, 1919. Affirmed.

W. P. Hardin indicted for murder. From verdict of guilty of manslaughter, defendant appeals.

The Court's charge, defendant's requests to charge, and the exceptions, referred to in opinion, follow:

Judge's Charge. Mr. Foreman and Gentlemen of the Jury: In the trial of a case, as we are now, the law imposes certain duties on you, and imposes certain duties on me. In reaching a verdict in a case the law makes you the sole judges of what the facts are. It prohibits me from even mentioning any opinion I may have as to the facts. It imposes upon me the duty of expounding to you the law of the case. It shall be my endeavor not to invade your province, and I assume you will not invade my province, but will accept the law as I give it to you.

This is a case in which the State of South Carolina charges this defendant with the felonious killing of the deceased. The State charges that he feloniously took the life of the deceased. He has pleaded "not guilty," and interposes the

plea of "self-defense," the plea of what is known as "self-defense," and upon that plea he assumes the burden of proof.

Before the State is entitled to a verdict it must satisfy you beyond a reasonable doubt that the defendant is guilty as charged in the indictment. Beyond a reasonable doubt means a substantial doubt growing out of the evidence, not a fanciful or whimsical doubt, because you can have that kind of a doubt about anything. If from the evidence you have a reasonable doubt as to whether or not the defendant is guilty as charged in the indictment, it is your duty to acquit him. If from the evidence you have a reasonable doubt as to whether or not he has established his plea of self-defense, it is your duty to acquit him. The plea of self-defense is a perfect defense when it is made out.

The State charges this defendant with the felonious killing of the deceased. The felonious killing of a human being is either murder or manslaughter. That is the only kind of killing the law undertakes to inflict punishment for. Every killing of a human being is justifiable, excusable, or felonious. Where an officer takes the life of a human being in the performance of a duty imposed on him by law, that is what is known in the law as justifiable killing. There is no question of that kind in this case. Excusable killing is that which takes place under such circumstances that the party cannot strictly be said to have taken the life of the deceased wilfully and intentionally. The question for you is, Was this killing an excusable or felonious killing? As I told you a moment ago, a felonious killing is either a murder or manslaughter. Murder is the felonious killing of a human being with malice. Malice may be either express, or it may be implied from the use of a deadly weapon. Express malice is manifested by some outward act—lying in wait, making threat to take his life, or something of that kind. Implied malice is such as you

have a right to infer from the use of a deadly weapon calculated to inflict death or serious bodily harm, and when nothing else appears, you have a right to infer that such a killing was a felonious killing, and done in malice. (If it appears that there was an intentional killing, if that appears from the evidence, and it was done with a weapon calculated to do serious bodily harm or to take one's life, you have a right to infer it was accompanied by malice, or a felonious killing.) Whether the malice is implied or whether it is expressed, if malice accompanies the intentional or felonious killing of a human being, it is murder.

The other form of felonious killing is manslaughter; that is, the unlawful or felonious killing of a human being without malice. The law recognizes there are occasions in a man's life where he may be so situated as to lose control of himself under sufficient provocation, and he acts from impulses rather than premeditation or design. In a case of that kind the law would not excuse him—it would not say he is not to be punished, but would not visit the extreme penalty of the law on him as it would in the case of a felonious killing accompanied by malice. But, to give you a familiar illustration (I find I can always tell a jury better what the law is by an illustration and not expressing my opinion as to the facts) : If I approach you and spit in your face or your ear, or pull your nose, that is calculated to cause you to lose control of yourself. In such a case the law would not excuse you, if under the sudden smart of such an insult, you took my life, but knows you are calculated to lose control of yourself under such circumstances, and would recognize it as an insult, and would call it manslaughter, and punish you accordingly if you took human life under such circumstances.

In this case you are relieved of the necessity of determining whether or not there has been a homicide, and you are relieved of the necessity of determining who committed it.

The defendant has admitted that he took the life of the deceased intentionally with a deadly weapon. Now, then, he says, While I did that, I did it under such circumstances as the law will excuse—I did it in self-defense, and on that defense he assumes that burden of proof. The law does not require him to establish it by the same strict degree of proof as the State is required to prove his guilt, but says he must prove it by the preponderance or the greater weight of the evidence—not necessarily by the greater number of witnesses—there may be one on the side you believe against a dozen on the other side you don't believe. The law says he must establish his plea of self-defense by the preponderance, the greater weight of the evidence—the evidence on his side must outweigh that on the side of the State. If he has done that, he has established his plea of self-defense.

There are four essential, prerequisite elements entering into the plea of self-defense. The law requires him to satisfy you by the preponderance of the evidence on all these four elements. If he satisfies you on three of them, and fails on any one of them, his plea of self-defense falls to the ground. He must be without fault in bringing on the difficulty. No man can bring on a difficulty and successfully plead necessity for taking human life. He must be without fault in bringing on the difficulty. Has the defendant shown you by the greater weight of the evidence he was without fault in bringing on this immediate difficulty, and was he without fault in bringing on this immediate difficulty? If so, he has not yet established his plea of self-defense. He must go a step further. He must show you that at the time he struck the fatal blow he was in danger of receiving serious bodily harm or death, and it was necessary to take the life of his assailant at the time he struck the fatal blow—it was necessary, or it appeared to be necessary, to strike the fatal blow in order to avert serious injury to himself or to avoid losing his own life. If he has shown you that, he

must yet go a step further and show that the circumstances at the time—the circumstances were such as would warrant a man of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm, or losing his own life. The test is not whether an unusually timid or an unusually brave man would have been so warranted—were the circumstances such as would warrant a man of ordinary firmness, prudence, and courage in coming to the same conclusion at the time the fatal blow was struck, in concluding at the time the fatal blow was struck that it was necessary, or appeared to be necessary, to strike the fatal blow in order to prevent serious injury or death to the one assailed.

A person has a right to act on the appearance of danger. For illustration, if one should point an unloaded gun at you at a distance of 10 or 12 steps, though the gun might be unloaded and though there might not be any actual danger, you would have a right to act on appearances. A man must believe at the time it was necessary, or it must have appeared to be necessary, and the circumstances must be such as to warrant that conclusion in the mind of a person of ordinary reason, prudence, and courage.

If he has satisfied you of that, he has got to go a step further and show you that he had no other probable means of escape except to take the life of his assailant. The law does not permit one to take human life lightly. If by retreating he can avoid taking human life without increasing his own danger of receiving serious bodily harm or losing his own life, he must do it. When a man is in his own house, he need not retreat. The imaginary wall to which the law says he must retreat is immediately behind his back, and, when by retreating he would increase his danger, he need not retreat. In olden times, when the first law books were written, the law said that before a man could strike he must retreat to the wall. In those times they fought with

sticks and stones and javelins, and, if he retreated to the wall, he might then turn and strike and strike to the death; but he must avoid taking human life, if he can do it by stepping aside or retreating, provided he does not increase his own danger thereby. The law does not require him to put himself in any worse condition or position. A man must have no other probable means of escape except to take the life of his assailant. These are the four elements of self-defense. If he has failed on any one of them, he has failed to establish his plea of self-defense. If you have a reasonable doubt as to whether or not he has made out his plea of self-defense, give him the benefit of it and acquit him. If you have a reasonable doubt as to whether or not he is guilty on the whole testimony, give him the benefit of it and acquit him.

Something has been said about an officer. The law permits a peace officer in the actual discharge of his duties to carry a weapon concealed about his person. He is not, when in the active discharge of his duties, violating the law by carrying a concealed weapon. Now, there is another suggestion made that I ought to give you my views about, as to what the privileges of an officer of the law are. If an officer of the law has a warrant to serve and is required to make an arrest, and proceeds to make the arrest or serve the warrant in a proper way, that act would not make him the aggressor in any difficulty that immediately follows. That is my understanding of the law as to peace officers. If you are a peace officer and have a warrant to serve or an arrest to make—on me, for instance—and, when you undertake to make that arrest or serve that warrant, you would not be the aggressor in any difficulty that might ensue. You would be doing what you have to do in serving the warrant or making the arrest; if doing it properly, you would not be the aggressor. I do not remember any evidence in this case that he was attempting to serve a warrant or attempting to

make an arrest, and, possibly, what I have said about that has no connection with this case.

Every man has a right to use the public highway—some call it the "king's highway." He has a right to be unmolested while walking on it or using it in any other proper way, and in so doing he is not violating the law.

There has been something said here about bad blood between these parties, and I think it is my duty to charge you as to that. Mr. Foreman, if there is bad blood existing between two citizens, and there have been antecedent threats between them, that would not give either one of them in itself the right to shoot down the other. If there is ill feeling between you and me—if I had gotten word that you expected to kill me—the effect would be you would have a right to judge more harshly my conduct than you would otherwise. If we are friends, and I happen to meet you on the street, and I put my hand in my pocket to get my pocketbook with no bad intent, ordinarily you would not be justified in concluding I was trying to get a weapon out with which to kill you. If there is violent feeling between us, and I put my hand in my pocket to get something, you would be justified in interpreting that act of mine more harshly than in the case of friends. If you receive threats of harm, and you meet the person who made them, you can judge more harshly in determining whether there is any necessity to act. It is for you to judge under all the facts whether he is guilty or not.

There is another matter—the question of insulting language. It makes no difference how opprobrious the epithets or insulting the language, it in itself does not give the right to strike or kill. No matter how insulting the language, it does not give one the right to strike on account of it. I have been requested to charge you certain propositions of law, and I think I have covered all of them but two : (Court reads section of request relating to the law of self-

defense being based on necessity, but when the law speaks of necessity it means reasonable necessity, etc.) (Court also reads section of request relating to duties of rural policeman while going to and returning from the place where his official duties call him.) With the explanation I have made, I charge that: A peace officer in the actual discharge of his duties as such officer has a right to carry a weapon concealed about his person without violating the law. If he has a valid warrant or is called upon to make an arrest he has the right to do so without being regarded as the aggressor in any difficulty that immediately follows. With that explanation I charge you as in here. (Court reads: I charge you self-defense is made out, etc.) I have charged you that already. I will charge you again, if upon a review of the entire testimony, both as to the State and the defendant, if you have a reasonable doubt as to whether he is guilty, or whether he has made out his plea of self-defense, it is your duty to acquit him. If you have no doubt as to his guilt, no doubt produced by the evidence, it would be your duty to convict him.

If you find the defendant guilty as charged, the form of your verdict will be as follows: If you find the defendant guilty of murder, "We find the defendant guilty of murder," and sign your name as foreman. If you find him guilty of murder, and if you find there are extenuating circumstances and wish to recommend him to the mercy of the Court, "We find him guilty of murder and recommend him to the mercy of the Court." A verdict of "guilty" without recommendation will mean that he is to suffer death by electrocution. With recommendation to the mercy of the Court will of itself change the penalty from electrocution to life imprisonment. If you find the killing was felonious, but not a malicious killing, done in sudden heat and passion upon sufficient legal provocation, the form of your verdict will be, "We find the defendant guilty of manslaughter."

the punishment for which is from 2 to 30 years in the discretion of the Court—for not longer than 30 years and not less than 2 years. If you find either that his plea of self-defense is well-founded, that he has established it not beyond a reasonable doubt, but by the greater weight of the evidence, find him not guilty.

Anything further for the State?

Nothing.

Anything further for the defense?

Nothing.

When you go into your room, if there is any testimony you want read to you, or, if there is anything you want to know about, don't hesitate to come out and ask what you want to know about. If it is proper and I can tell you, I will do so. If not, I will try to tell you so in a way, in a pleasant way, so as not to make you feel bad. Find your verdict and write it on the back of the indictment.

Defendant's Requests to Charge. (1) It is sometimes said that the law of self-defense is based on absolute necessity, and that a person cannot take the life of another unless there is an absolute necessity for so doing. This is not the law. The law of self-defense is based on necessity; but when the law speaks of necessity it means a reasonable necessity. Where a person is placed in such circumstances that a person of ordinary prudence and firmness would reach the conclusion that he was in danger of death or serious bodily injury, then such person may act on such appearances, and strike or shoot to protect himself. (Charged.)

(2) Where a person, being without fault, and in a place where he has a right to be, in the exercise of his lawful business or calling, is violently or feloniously assaulted, he may, without retreating, repel force by force, and, if in the reasonable exercise of his right of self-defense his assailant is killed, he is excused. (Refused.)

20—S. C. 114

(3) A public officer, or one acting under his authority, who is attacked while in the lawful exercise of his duties, is under no duty to retreat, but may stand his ground and kill his assailant if necessary to save himself from death or serious bodily harm. (Refused.)

(4) Under the law of this State, a person who is deputized by a rural policeman to assist him in the performance of some legal duty is an officer of the law, and is entitled to the rights and privileges of an officer of the law while going to and returning from the place where his official duties call him. (Charged.)

(5) Self-defense is made out when the evidence raises a reasonable doubt in the minds of the jury whether the defendant took life in self-defense. (Charged.)

Exceptions. (1) His Honor erred in charging the jury as follows: "If it appears that there was an intentional killing, if that appears from the evidence, and it was done with a weapon calculated to do serious bodily harm or to take one's life, you have a right to infer it was accompanied by malice, or a felonious killing." The error is that his Honor. had no right to instruct the jury that they might infer malice from the mere fact of killing with a weapon calculated to do serious bodily harm or to take life, for the reason that this is a charge on the facts contrary to the Constitution, in that it undertakes to intimate to and instruct the jury what facts in the case are evidence of malice.

It was also error, in that after all the evidence is out, the presumption of malice from the use of a deadly weapon fades from the case, and the jury must find malice, if at all, from the evidence, without any aid from the Court as to what weight should be attached to killing with a deadly weapon, or what inference they may draw from such.

(2) His Honor erred in charging the jury as follows: "The defendant has admitted that he took the life of the deceased intentionally with a deadly weapon"—the error

being that the defendant pleaded not guilty, and also self-defense; that a plea of self-defense is not an admission of an intentional killing, since self-defense is done under the stress of necessity.

It is further error for that his Honor had just previously charged the jury that they had a right to infer malice from the intentional killing with a deadly weapon.

(3) His Honor erred in charging the jury in respect to the provocation which the law recognizes as sufficient to reduce a homicide from murder to manslaughter, by way of illustration as follows: "If I approach you and spit in your face or ear, or pull your nose, that is calculated to cause you to lose control of yourself. In such case the law would not excuse you, if under the smart of such, an insult you took my life, but knows you are calculated to lose control of yourself under such circumstances, and would recognize it as an insult, and would call it manslaughter." The error is that the illustration is absolutely irrelevant to any testimony in the case, and is neither parallel nor analogous. Again, the illustration tends to limit provocation to the kind of acts stated in the illustration.

(4) His Honor erred, in that the foregoing incorrect instructions and definitions of the law clouded the issue of self-defense, and prevented the jury from approaching the plea of self-defense under the evidence with a clear and adequate knowledge of the law.

(5) His Honor erred in charging the jury that the defendant's plea of self-defense fails unless he shows by the preponderance of the evidence that he was without fault in bringing on the difficulty, without further instructing them what kind or degree of fault would shut off the right of self-defense; the error being that the fault, to be sufficient to deny the right of self-defense, must be such acts or conduct that are reasonably calculated to provoke a difficulty with a person of ordinary firmness, reason, and prudence,

and also because in law there are at least three degrees of fault, one of which is denominated a "slight fault" which is excusable, and for which no responsibility is incurred; and by not declaring the law his Honor left it to the jury to fix their own standard of fault, without regard to whether it was such as would be inexcusable or otherwise.     .

(6) His Honor erred, in that, after correctly instructing the jury as to the three elements of self-defense, with the above exception, to wit: (a) That the defendant must be without fault in bringing on the difficulty; (b) that at the time he struck the fatal blow he was in danger, real or apparent, of receiving serious bodily harm or death at the hands of his assailant; that it was necessary to take the life of his assailant at the time he struck the fatal blow in order to avert serious injury to himself or to avoid losing his own life; and (c) that he must go a step further and show that the circumstances at the time he struck the fatal blow were such as would warrant a person of ordinary prudence, firmness, and courage in coming to the conclusion that it was necessary or apparently necessary, to strike the fatal blow in order to prevent death or serious bodily injury.   His Honor went further and charged: "If he has satisfied you of these, he has not yet established his plea of self-defense, but he must go a step further and show you that he had no other probable means of escape except to take the life of his assailant."   The error is that his Honor had already given the full law of self-defense in defining the three elements above given, in which the necessity to retreat is necessarily involved and concluded; and, by requiring the defendant, after establishing the necessity to kill, to go further and show in addition that he had no other probable means of escape, he placed a burden upon the defendant beyond the requirements of the law.

(7) That by adding the fourth element of self-defense, his Honor erred, for the reason that if the defendant estab-

lished the first three elements as defined by his Honor, he then established a complete defense, and is not required, after establishing his defense, to go further and show that he had no other probable means of escape, for when the necessity to kill has come, the avenue of escape is closed.

(8) His Honor erred also, in charging the jury that the defendant had yet to go a step further and show that he had no other probable means of escape, for the reason that there might be a probable means of escape, yet it might not be known to or apparent to the defendant, and left the impression on the jury that a probable way of escape, whether apparent to a man of ordinary prudence and firmness or not, would destroy his right of self-defense.

(9) His Honor erred in refusing to charge the defendant's second request, as follows: "Where a person, being without fault, and in a place where he has a right to be, in the exercise of his lawful business or calling, is violently or feloniously assaulted, he may, without retreating, repel force by force, and, if in the reasonable exercise of his right of self-defense his assailant is killed, he is excused"—the error being that the request contains a sound principle of law applicable to the issue of self-defense.

(10) His Honor erred in refusing to charge the defendant's third request, as follows: "A public officer, or one acting under his authority, who is attacked while in the lawful exercise of his duties, is under no duty to retreat, but may stand his ground and kill his assailant if necessary to save himself from death or serious bodily harm"—the error being that the request contains a sound principle of law applicable to the law of self-defense and the issue in the case at bar.

*Messrs. Butler & Hall,* for appellant, cite: *While the law will presume malice from the intentional killing with a deadly weapon when nothing else appears, however when all the testimony is out showing the facts and circumstances*

*such presumption disappears:* 72 S. C. 200.  *Charge only gave the jury option of finding defendant guilty of murder or manslaughter:* 89 S. C. 140; 85 S. C. 265.  *Interpretation of "fault" as used in cases of self-defense:* 33 S. C. 594; 21 Cyc. 806, 1053.  *For correct statement of law as to self-defense see:* 13 S. C. 464; 33 S. C. 582; 29 S. C. 236; 43 S. C. 212; 52 S. C. 484; 68 S. C. 137; 59 S. C. 305; 85 S. C. 67; 71 S. C. 146; 82 S. C. 399; 85 S. C. 241; 94 S. C. 34; 94 S. C. 461; 103 S. C. 320; 99 S. C. 753.  *Rule as to retreat to escape necessity of killing:* 85 S. C. 241; 40 S. C. 360; 29 S. C. 236; 55 S. C. 36; 90 S. C. 293; 40 S. C. 383; 40 S. E. 332; 41 L. Ed. (U. S.) 551.

*Mr. N. W. Hardin,* also for appellant, cites: *Burden as to self-defense was put on defendant:* 36 S. C. 486; 60 S. C. 472; 71 S. C. 136; 73 S. C. 257.  *As to means of escape:* 13 S. C. 464; 29 S. C. 34; 40 S. C. 383; 42 S. C. 205; 34 S. C. 16; 15 Sup. Ct. Rep. (U. S.) 692; 79 S. C. 149; 109 S. C. 410.

*Mr. I. C. Blackwood, Solicitor,* for respondent.  Oral argument.

June 28, 1920.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The appellant was tried on an indictment for murder at the Fall term of Court for Cherokee county, 1919, before Judge Gary, and a jury, and found guilty of manslaughter, and sentenced to six years on public works.  From this sentence defendant appeals, and by 10 exceptions imputes error in his Honor's charge to the jury, and his refusal to charge certain requests asked for by the defendant.

The exceptions are all overruled, being without merit. The charge, taken as a whole, was a clear, lucid exposition of the law, applicable to the case, and, had his Honor taken the time to have written out his charge before he charged the jury, he could not have made it clearer, plainer, or more lucid, or freer from error.

Judgment affirmed.