480 S.E.2d 62

**The STATE, Respondent,**

v.

**Jerome LONG, Appellant.**

No. 24544.

Supreme Court of South Carolina.

Heard Oct. 3, 1996.

Decided Jan. 13, 1997.

60

Senior Assistant Appellate Defender Wanda H. Haile of S.C. Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Robert F. Daley, Jr., Columbia; and Solicitor Walter M. Bailey, Jr., Summerville, for respondent.

BURNETT, Justice:

Appellant was convicted of murder and sentenced to life imprisonment.

## ISSUES

1. Did the trial judge err by failing to direct a verdict of acquittal because the evidence established self-defense as a matter of law?
2. Did the trial judge err by refusing to instruct the jury on defense of others?

## DISCUSSION
### I.

Appellant argues the trial judge erred by failing to direct a verdict of acquittal because the evidence established self-defense as a matter of law. He contends he was entitled to a directed verdict on self-defense because the evidence presented was similar to that in *State v. Hendrix*, 270 S.C. 653, 244 S.E.2d 503 (1978). We disagree.

When ruling on a motion for a directed verdict, the trial judge is concerned with the existence of evidence, not its weight. When this Court reviews the denial of a motion for a directed verdict, it views the evidence in the light most favorable to the non-moving party, and if there is any direct or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced, refusal by the trial judge to direct a verdict is not error. *State v. Williams,* ―― S.C. ――, 468 S.E.2d 626 (1996); *State v. Stokes,* 299 S.C. 483, 386 S.E.2d 241 (1989).

To establish self-defense, the defendant must establish (1) he was without fault in bringing on the difficulty; (2) he actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) a reasonably prudent person of ordinary firmness and courage would have entertained the same belief; and (4) he had no other probable means of avoiding the danger. *State v. Bruno,* 322 S.C. 534, 473 S.E.2d 450 (1996); *State v. Davis,* 282 S.C. 45, 317 S.E.2d 452 (1984). However, a person attacked on his own premises, without fault, has the right to claim immunity from the law of retreat. *State v. Sales,* 285 S.C. 113, 328 S.E.2d 619 (1985).

Viewing the testimony in the light most favorable to the State, the evidence is as follows. Appellant lived with his wife and her four children. Appellant's wife and others testified that prior to the day of the shooting, appellant[1] stated he would kill Ronald, appellant's twenty-one year old stepson who did not live in appellant's home, if he came into the home. On the day of the shooting, appellant told his eleven-year-old stepson, Chris (Ronald's brother), he had called the police and reported Ronald had stolen a bicycle. Chris left appellant's home and told Ronald about appellant's statement. Chris accompanied Ronald back to the home. Appellant was in his bedroom with the door closed. Ronald beat on the bedroom door with a baseball bat and argued with appellant through the door about appellant's telephone call to the police. Appellant opened the door and immediately shot Ronald once in the chest, killing him. According to eyewitnesses Chris and Matilda, appellant's stepdaughter (Ronald's sister), Ronald had

---

1. At the time of trial, appellant was twenty-nine years old.

the baseball bat down at his side after using it to knock on the door; Ronald did not threaten appellant with the bat.

Appellant testified he was afraid of Ronald when he used illegal drugs. A police officer testified that, after the shooting, appellant told him Ronald "came in [appellant's home] in an erratic mode, as if he was high." Appellant offered no corroborating evidence Ronald actually used drugs.

Appellant further testified that on the day before the shooting, Ronald had come to his home carrying a handgun. Appellant called the police, but Ronald left before the police arrived. Consequently, the specifics of this incident were not confirmed by the police report.

Appellant admitted he had a conviction for discharging a firearm into a dwelling. He stated he had previously been beaten with a baseball bat and, as a result, was afraid of people with baseball bats.

While self-defense can be inferred even from the State's version of the evidence, the evidence of self-defense is not conclusive. Whether appellant actually believed he was in imminent danger of losing his life or sustaining serious bodily injury and whether an ordinary person would have entertained the same belief were questions for the jury. Accordingly, the trial judge properly refused to direct a verdict in appellant's favor based on self-defense. *State v. Starnes,* 213 S.C. 304, 49 S.E.2d 209 (1948) (in homicide prosecution of defendant who was in his own home when deceased was killed, where there was some testimony defendant was venting a grudge, defendant's claim of self-defense was for the jury).

Furthermore, the evidence presented at appellant's trial is not similar to that presented in *State v. Hendrix, supra.* In *Hendrix,* the victim and Mr. Hendrix had a poor relationship. Early on the day of the shooting, the victim told Mr. Hendrix "they were going to have to fight to settle this thing." Later, the victim, while intoxicated, drove to Mr. Hendrix's property. While pointing a shotgun, Mr. Hendrix warned the victim to "back off." The victim returned to his truck, obtained a shotgun, and walked towards Mr. Hendrix. At this point, Mr. Hendrix shot and killed the victim. Unlike appellant, Mr. Hendrix was clearly in imminent danger. Moreover, unlike the parties in *Hendrix,* appellant and Ronald were close in age

64

and there was no evidence Ronald was actually under the influence of drugs at the time of the shooting.

## II.

■ Appellant argues the trial judge erred by refusing to instruct the jury on defense of others. We disagree.

■ The law to be charged is determined from the evidence presented at trial. *State v. Gourdine*, 322 S.C. 396, 472 S.E.2d 241 (1996); *State v. Todd*, 290 S.C. 212, 349 S.E.2d 339 (1986). Under the theory of defense of others, one is not guilty of taking the life of an assailant who assaults a friend, relative, or bystander if that friend, relative, or bystander would likewise have the right to take the life of the assailant in self-defense. *State v. Sales, supra; State v. Hays*, 121 S.C. 163, 113 S.E. 362 (1922); *State v. Cook*, 78 S.C. 253, 59 S.E. 862 (1906).

Appellant testified that on the day of the shooting, Ronald came to appellant's house, beat on the side of the house, entered the house and beat on appellant's bedroom door with the baseball bat and cursed. Appellant stated he was afraid and begged Ronald to leave. Then, the bedroom door suddenly opened, Ronald hit him with the bat, and appellant shot Ronald. Appellant testified he shot Ronald trying to defend himself and described the shooting as an accident. He further testified the children in the house could have been hurt.

Appellant was not entitled to a jury charge on defense of others because there was no evidence he was defending others when he shot Ronald. The testimony indicates Ronald was only angry with and threatened appellant with a baseball bat. There was no evidence Ronald threatened the other people in appellant's home. Accordingly, while appellant was entitled to and received a charge on self-defense, he was not entitled to a charge on defense of others. *Bozeman v. State*, 307 S.C. 172, 414 S.E.2d 144 (1992) (defendant is not entitled to a jury charge on defense of others where the evidence indicates the victim swung a knife at the defendant, not at the defendant's brother).

**AFFIRMED.**

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.