UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BETTY T. SIMPSON,

  *Plaintiff-Appellee,*

v.

SAFECO LIFE INSURANCE COMPANY,

  *Defendant-Appellant.*

No. 01-1804

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
Henry M. Herlong, Jr., District Judge.
(CA-00-1879-8-20)

Argued: December 3, 2001

Decided: January 22, 2002

Before WILKINS, TRAXLER, and GREGORY, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Brian David Black, HAYNSWORTH, BALDWIN, JOHNSON & GREAVES, L.L.C., Greenville, South Carolina, for Appellant. James Clyde Johnson, JOHNSON & JOHNSON, Greenwood, South Carolina, for Appellee. **ON BRIEF:** John G. Creech, HAYNSWORTH, BALDWIN, JOHNSON & GREAVES, L.L.C., Greenville, South Carolina, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Safeco Life Insurance Company (Safeco) appeals a district court order granting judgment in favor of Betty T. Simpson in her action seeking recovery under an accidental death and dismemberment benefit plan for the death of her 19-year-old son, Jacus, from a self-inflicted gunshot wound. We vacate the judgment and remand for entry of judgment in favor of Safeco.

### I.

The shooting occurred in Jacus' home on June 13, 1998. A few minutes before Jacus shot himself, he walked into a room in which his uncle, Johnny Lee Turner, was watching television. When Jacus began removing the bullets from a pistol, Turner told Jacus, "Don't be playing with any guns," to which Jacus responded, "I'm not, I'm gonna be safe." J.A. 35 (internal quotation marks omitted). Jacus then dumped several bullets onto the bed, picked them up, and said to Turner, "These are little old light bullets." *Id.* (internal quotation marks omitted). His uncle responded, "Yea, but they are too powerful, you shouldn't be using them." *Id.* at 36 (internal quotation marks omitted).

As Jacus was leaving the room, his friend Michael Long entered the house, and the two met in the kitchen. The two boys were laughing and joking when Jacus pulled the pistol out from his pants and pointed it at Long about four or five inches from Long's chest. On a dare from Long, Jacus pulled the trigger, but the pistol did not fire. Still laughing and teasing, Jacus then put the pistol to his own head and, again on Long's dare, pulled the trigger. This time the weapon discharged, killing Jacus.

At the time of his death, Jacus was employed by Matlab, Inc. and was a participant in an accidental death and dismemberment benefit

plan governed by the Employee Retirement Income Security Act (ERISA) of 1974 and provided through a Safeco insurance policy (the Policy). The Policy provided that Safeco would pay $10,000 to the named beneficiary, Simpson here, if the employee's death "was directly and solely due to external, violent and accidental means." *Id.* at 188. The Policy further provided that it did not cover "any loss caused wholly or partly, directly or indirectly, by" "suicide or attempted suicide," "intentionally self-inflicted injury," or "committing or attempting to commit an assault or felony." *Id.* at 189. Following Jacus' death, Simpson demanded payment from Safeco. Safeco refused to pay, however, based on its assertions that the shooting was not accidental and that it occurred during Jacus' commission of a felony, namely, possession of a pistol by an individual under 21 years old. *See* S.C. Code Ann. § 16-23-30(c), (e) (Law. Co-op. 1985). Simpson subsequently instituted this action, seeking benefits and attorneys' fees and costs. *See* 29 U.S.C.A. § 1132(a)(1)(B), (g)(1) (West 1999).

Following discovery, the district court granted judgment to Simpson and awarded attorneys' fees and costs. Regarding whether the shooting was accidental, the court determined that Jacus reasonably believed that the pistol was not loaded and that he did not intend to shoot himself. Concerning the felony exclusion, the court recognized that possession of a pistol by an individual under 21 is a felony in South Carolina. Nevertheless, the court found the felony exclusion inapplicable because "neither the statute [prohibiting possession of a pistol by a minor] nor the insurance policy contemplates the facts in this case." J.A. 6.

## II.

Safeco contends that the district court erred in concluding that the felony exclusion did not apply. "[O]ne of the primary functions of ERISA is to ensure the integrity of written, bargained-for benefit plans." *United McGill Corp. v. Stinnett*, 154 F.3d 168, 172 (4th Cir. 1998). Accordingly, "the plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." *Id.* (internal quotation marks omitted). We agree with Safeco that the district court failed to give effect to the plain language of the Policy.

The Policy specifically states that "SAFECO will not pay for any loss caused wholly or partly, directly or indirectly, by . . . committing or attempting to commit an assault or felony." J.A. 189. In South Carolina, possession of a weapon by an individual under 21 is a felony. *See* S.C. Code Ann. § 16-23-30(e); S.C. Code Ann. § 16-23-50(A)(1) (Law. Co-op. Supp. 2000). There can be no doubt that Jacus' felonious possession of the pistol here contributed to his death, *i.e.*, but for Jacus' possession of the pistol, he would not have shot himself. At the least, his possession of the weapon was a partial, indirect cause of his death. Therefore, the plain language of the Policy supports Safeco's denial of benefits.[1]

Simpson makes several arguments that the felony exclusion should not apply. She first argues that interpreting the policy to deny coverage would require denial of benefits to an individual under 21 in possession of a pistol even if he were killed in a traffic accident unrelated to his possession of the weapon. That is not true. As we have explained, the Policy provides that the felony exclusion applies only when the commission of a felony is at least a partial, indirect cause of death.

Simpson next contends that interpreting the exclusion to apply here would cause the absurd result that an infant who picked up a pistol and accidentally shot himself would not be covered. The absurd result suggested by Simpson is imaginary: The Policy does not cover infants, but rather covers only "regular full time employees of [Matlab, Inc.] working a minimum of 30 hours each week." J.A. 194. Simpson also maintains that interpreting the felony exclusion to apply here would produce the absurd result that the death of an individual just under 21 who shoots himself would not be covered, but the death of one who just turned 21 would be covered. We see no absurdity, however, in distinguishing between deaths caused by legal conduct and those related to felonious conduct.

Simpson finally contends that Jacus' possession of the weapon was not felonious because his possession was the result of a "temporary

---

[1]Because we dispose of this appeal on this basis, we do not address the issue of whether the district court properly concluded that Jacus' death was accidental and not the result of suicide.

loan . . . for instructions under the immediate supervision of a parent or adult instructor." S.C. Code Ann. § 16-23-30(c). We disagree. There is no indication in the record that Jacus' possession of the weapon was the result of a "temporary loan." In fact, both Turner and Turner's girlfriend in their affidavits described the weapon as "his [Jacus'] gun." J.A. 35, 42. Nor is there any support for Simpson's claim that Jacus was under the immediate supervision of a parent or adult instructor when he shot himself. Simpson claims that Jacus' uncle was immediately supervising Jacus, but he was watching television in a different room when the weapon discharged; he was not supervising Jacus, immediately or otherwise. For both of these reasons, the instructor exception does not apply.[2]

## III.

In sum, because the district court erred in ruling that the felony exclusion does not apply, we vacate the judgment in favor of Simpson and remand for entry of judgment in favor of Safeco.

*VACATED AND REMANDED*

---

[2]At oral argument, Simpson argued that even if the exceptions enumerated in § 16-23-30(c) do not apply, it is not a violation of § 16-23-30 for an individual under 21 to possess a pistol in his own home. In support of this position, Simpson cited S.C. Code Ann. § 16-23-20, which makes it unlawful for anyone to carry a pistol, except under certain circumstances, one of which is that the individual is in his own home. *See* S.C. Code Ann. § 16-23-20(8) (Law. Co-op. Supp. 2000). Simpson's argument is without merit. The statute on which Simpson relies merely enumerates circumstances under which it is permissible for individuals *generally* to carry pistols. Section 16-23-30, on the other hand, identifies certain classes of individuals who are allowed to possess weapons only in a far narrower range of circumstances. Therefore, section 16-23-30(e) prohibits individuals under 21 from possessing pistols, even in their homes, unless the enumerated exceptions apply. *See State v. Sullivan*, 547 S.E.2d 183, 184 n.1 (S.C. 2001) (stating, in a case involving an individual under 21 who possessed a pistol in his own home, that "[s]ection 16-23-30(e) makes it unlawful for a person under age twenty-one to possess a pistol except under certain circumstances not applicable here").